FAUSTINA M. MOORE vs. NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY.

Middlesex.   March 30, 1906. — June 21, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, & SHELDON, JJ.

*Insurance*, Life.   *Words*, "Sane or insane."

Under R. L. c. 118, § 73, an application for life insurance, of which a copy is attached to the policy issued upon it and which is referred to therein, forms part of the contract of insurance although neither the original application nor the copy of it has printed upon it in large bold-faced type or otherwise the words "Under the laws of Massachusetts, each applicant for a policy of insurance to be issued hereunder is entitled to be furnished with a copy of this application attached to any policy issued thereon."

A policy of life insurance incorporated by reference the following agreement contained in the application for insurance signed by the insured : " And I do further agree that if within two years from the date of said policy I shall pass south of the Tropic of Cancer, or . . . shall within one year from the date of said policy whether sane or insane die by my own hand, then and in every such case any policy issued on this application shall be null and void."   *Held*, that the words "sane or insane " covered every case of suicide, and that there could be no recovery on the policy where the insured killed himself within the year although his act " was the result of a blind and irresistible impulse over which the will of the deceased had no control and was not an act of volition," and " he did not know or understand the nature and consequences of the act."

LATHROP, J.   This is an action of contract on a policy of life insurance issued to Walter T. Moore on May 27, 1904, by a foreign corporation doing business here, under an agent duly authorized, and the policy was delivered here.   Both parties have argued the case on the assumption that the policy is a Massachusetts contract, and we so treat it.

On July 29, 1904, Walter T. Moore, by virtue of the power reserved to him in the policy, assigned the same to his wife Faustina M. Moore, the plaintiff in this action.

The answer contained a general denial and set up in defence that Walter T. Moore died by his own hand, within one year from the date of the policy, and also set up the following agreement contained in the application for the insurance, signed by Walter T. Moore: " And I do further agree that if within two years from the date of said policy I shall pass south of the Tropic of

Cancer, or . . . shall within one year from the date of said policy whether sane or insane die by my own hand, then and in every such case any policy issued on this application shall be null and void."

The plaintiff filed a replication to the new matter set up in the answer, alleging that the application did not comply with the R. L. c. 118, § 73, and did not form part of the policy, and denying that Walter T. Moore died by his own hand.

Later the plaintiff amended the replication, by adding thereto the following clause: " And the plaintiff further says that if the defendant shall introduce evidence tending to show that the death of Walter T. Moore was self-inflicted or that the instrumentality was operated by his hand, then the plaintiff says that the death was caused under such a combination of circumstances that it was not the result of the will and intention of the deceased, adapting the means to the end and contemplating the physical nature and effects of the act; that it was the result of a blind and irresistible impulse over which the will of the deceased had no control and was not an act of volition, that he did not know or understand the nature and consequences of the act."

This amendment was demurred to and the demurrer sustained. The plaintiff appealed.

At the trial in the Superior Court there was evidence tending to show that Mr. Moore was in financial difficulty in Lowell ; that he left Lowell on November 22, 1904, the day on which the directors and some of the creditors of the Lowell Coal Company, of which Moore was manager and which was in financial difficulty, were to have a meeting, went to his summer place in Amherst, New Hampshire, which he had closed for the season about a month before, but which was then occupied by his man looking after his live stock and other property there, arrived in the afternoon, talked with his hired man about his troubles and the possibility of having to sell his place, directed his man to go for his team to drive him to the station, and then went into the house alone; that a short time thereafter, after waiting for him to come out, his man went into the house, passed through the dining room and kitchen into the wood-shed, where he found Mr. Moore lying on his back on the ground, dead; that there was a rifle in an iron vise at one end of a work-bench, and

attached to the trigger was a string which apparently had been passed through a hasp; that Moore had been shot through the body and the bullet was found imbedded on the opposite side of the shop at a spot towards which the rifle was pointed; that several hours thereafter his man found lying upon Moore's overcoat in the dining room a piece of paper in Moore's handwriting, but not signed by him, bidding good bye to his mother and wife, and giving directions as to where to telephone.

During the course of the trial the plaintiff offered in evidence the original policy expressly excluding from his offer two photographic copies annexed thereto by attachment, one of which was headed "Application to the Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin." The other photographic copy was of the declaration made to the medical examiner. The defendant objected to the offer and the judge stated, " I will allow the entire contract put in, and I will rule later upon the effect of the application," to which ruling the plaintiff excepted. Subsequently the defendant offered the original application, which the judge admitted against the objection and exception of the plaintiff. Neither the original application nor the copy had upon it in large, bold-face type, nor in any form of type or writing, the words: " Under the laws of Massachusetts, each applicant for a policy of insurance to be issued hereunder is entitled to be furnished with a copy of this application attached to any policy issued thereon."

The plaintiff made six requests for instructions, which were not given.

The jury returned a verdict for the defendant; and to the question " Did the deceased Walter T. Moore die intentionally by his own hand?" the jury answered " Yes."

The case is before us on the plaintiff's exceptions, and on her appeal from the order sustaining the demurrer to the amendment of the replication.

1. The first question which it is necessary to consider is whether the application forms part of the policy. This in various ways is the subject of the six requests which were refused in the court below. The answer to the question depends upon the construction to be given to the following words which form a part of the R. L. c. 118, § 73 : " Every policy which contains

a reference to the application of the insured, either as a part of the policy or as having any bearing thereon, must have attached thereto a correct copy of the application, and unless so attached the same shall not be considered a part of the policy or received in evidence. Each application for such policy shall have printed upon it in large bold-faced type the following words: ' Under the laws of Massachusetts, each applicant for a policy of insurance to be issued hereunder is entitled to be furnished with a copy of this application attached to any policy issued thereon.' "

We are of opinion that it was the intention of the Legislature to inform the insured that he was entitled to have a copy of the application attached to his policy, and that when this was done, the application formed a part of the contract, although the words required to be printed in bold-faced type were omitted. If the Legislature had intended otherwise a very slight change in the. language of the section would have effected their intention. We are of opinion therefore that the application was rightly admitted, and that the rulings requested were rightly refused. .

2. The remaining question is raised by the demurrer to the amended replication. While by the R. L. c. 173, § 31, the plaintiff may at any time before trial file a replication to the answer " clearly and specifically stating any facts in reply to new matter therein," yet as a general rule no further pleading is required after the answer. And the same section goes on to provide : " Any new matter in avoidance of the action which the answer contains shall be considered to be denied by the plaintiff without a replication, unless the court, upon motion of the defendant, requires him to reply thereto, and to state what part, if any, he admits or denies."

In our opinion the demurrer to the amended replication was rightly sustained. Under the old form of policy which exempted from the terms of the contract cases of death by suicide or by the hand of the assured, there was much conflict in the authorities, and in *Daniels* v. *New York, New Haven, & Hartford Railroad*, 183 Mass. 393, 397, it was said by Chief Justice Knowlton, that all agreed " that death self-caused in an uncontrollable frenzy, without knowledge or appreciation of the physical nature of the act, would not be death by suicide or by one's own hand." It

was further said to be the doctrine of this court as stated in *Dean* v. *American Ins. Co.* 4 Allen, 96, and in *Cooper* v. *Massachusetts Ins. Co.* 102 Mass. 227, following certain English cases, " that if death is the result of volition by one who has a conscious purpose to end his life, and has intelligence to adapt means to ends, it is his own act within the meaning of such a contract, even though he is so far insane as not to be morally responsible for his conduct." It was also said that in some other jurisdictions, including the Court of Appeals of New York and the Supreme Court of the United States, it had been held that " if one, by reason of his insanity, is unable to appreciate the nature and qualities of his own act in its relations to the moral world, so that he is not criminally responsible for it, he does not commit suicide or cause death by his own hand within the meaning of such a policy, if he deliberately and wilfully takes his own life."

To meet the difficulty caused by this conflict of decisions, the words " sane or insane " were introduced into policies of insurance.

In *Bigelow* v. *Berkshire Ins. Co.* 93 U. S. 284, where the policy contained the clause avoiding the policy if the insured should die by suicide, sane or insane, the defendant set up in its answer that the insured died from the effects of a pistol wound inflicted upon his own person by his own hand, and that he intended by this means to destroy his life. The replication alleged that the insured, when he inflicted the pistol wound upon his person by his own hand, was of unsound mind, and wholly unconscious of his act. A demurrer to the replication was sustained. It was said by Mr. Justice Davis in delivering the opinion of the court, that the words " sane or insane " must receive a reasonable meaning, and, further: " Nothing can be clearer than that the words, ' sane or insane,' were introduced for the purpose of excepting from the operation of the policy any intended self destruction, whether the insured was of sound mind or in a state of insanity."

In *De Gogorza* v. *Knickerbocker Ins. Co.* 65 N. Y. 232, the words " sane or insane " were given their full meaning. The trial judge had instructed the jury that " if the act causing the death of the assured was the involuntary act of one incapable of exercising his will, then the company would be liable." This

was held to be erroneous.  And in an elaborate opinion of the court it is said : " We prefer to place our decision upon the ground that the words of the proviso in the policy before us, by plain rules of interpretation, exempt the defendant from liability.  That this language, in view of previous decisions, was inserted for such a purpose, cannot be doubted, and that it was agreed to by both the insured and the insurer is not questioned, and that it is a provision allowed by law, no one denies.  We are to say from these words what the parties must have intended, and we cannot properly say that additional words having no meaning were inserted in the contract, and if they mean anything it is just what the words commonly import, and that is, if death ensues from any physical movement of the hand or body of the assured proceeding from a partial or total eclipse of the mind, the insurer may go free.  We are not altogether unmindful of the force of the proposition that a man does not die by his own hand who has not sufficient mind to will his own death, and it is not, perhaps, entirely easy to see in what precise words in our language the idea may be accurately and artistically expressed that a totally insane man may take his own life.  But the question seems to involve more — the refinement of language — than the application of practical sense, and we are of the opinion that, in the common judgment of mankind, it will be considered that when a totally insane man blows his brains out with a pistol that he will be said to have died by his own hand within the meaning of a policy such as we have now under consideration." See also *Travellers' Ins. Co.* v. *McConkey*, 127 U. S. 661 ; *Mutual Ins. Co.* v. *Kelly*, 114 Fed. Rep. 268, 280 ; *Clarke* v. *Equitable Assur. Soc.* 118 Fed. Rep. 374 ; *Pierce* v. *Travelers' Ins. Co.* 34 Wis. 389 ; *Billings* v. *Accident Ins. Co.* 64 Vt. 78 ; *Scarth* v. *Security Mutual Life Society*, 75 Iowa, 346 ; *Mutual Reserve Fund Assoc.* v. *Payne*, 32 S. W. Rep. 1063, 1066 ; *Adkins* v. *Columbia Ins. Co.* 70 Mo. 27 ; *Chapman* v. *Republic Ins. Co.* 6 Biss. 238 ; *Tritschler* v. *Keystone Benefit Assoc.* 180 Penn. St. 205 ; *Sargent* v. *National Ins. Co.* 189 Penn. St. 341 ; *Keefer* v. *Modern Woodmen*, 203 Penn. St. 129 ; *Sabin* v. *National Union*, 90 Mich. 177 ; *Scherar* v. *Prudential Ins. Co.* 63 Neb. 530.

On reason and on the authorities, we can have no doubt that the old rule is done away with, and that the words " sane or in-

sane " cover every case of suicide. Of course, a death by shooting may be accidental, but there is nothing in this case to show any accident. The evidence shows clearly a case of suicide, and it makes no difference what the state of mind of the person committing suicide was. The exceptions must therefore be overruled and the appeal dismissed.

*So ordered.*

*W. H. Bent*, for the plaintiff.
*H. G. Allen*, for the defendant.