## Sovereign Camp Woodmen of the World v. Ethridge.

(Decided November 18, 1915.)

### Appeal from Fulton Circuit Court.

Insurance—Suicide Clause.—Although a policy of insurance provides that if a member dies by his own hand or act, whether sane or insane, the policy shall be void, this condition will not avoid the policy if at the time the insured came to his death by his own hand he was so insane that he did not know that he was taking his life or that the act he was committing would probably result in his death, or he did not have sufficient will power to govern his actions by reason of some insane impulse the result of mental unsoundness.

COLEMAN & WELLS for appellant.

R. O. HESTER and HESTER & HESTER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

E. D. Ethridge was a member of the appellant society, Woodmen of the World, and there was issued to him a policy of insurance for $750, payable at his death to his mother, the appellee. Ethridge came to his death by drinking carbolic acid, and the appellant refused to pay the policy on the ground that it was stipulated in the policy that "if the member holding this certificate should die by his own hand or act, whether sane or insane, this certificate shall be null and void and of no effect," and therefore the right to recover the insurance was forfeited by the admitted manner of Ethridge's death.

In avoidance of this plea the beneficiary averred in the reply that when Etheridge "came to his death he was of unsound mind and that when he took his life he was crazy and his mind was so far gone he was unconscious of the fact that he was taking his life and was actuated by an irresistible impulse that he could not control or resist, and at the time he took his life his mind was so deranged that he was not responsible for his act."

On a trial before a jury there was a verdict in favor of the beneficiary, and from the judgment on this verdict the insurer appeals.

It is first urged as a ground for reversal that the evidence did not show that Ethridge at the time he took his life was laboring under such mental disturbance as not to know or appreciate the quality of his act, and,

therefore, the court should have directed a verdict in favor of the appellant.

Briefly, the evidence tends to show that Ethridge, who was employed in a mercantile establishment, was charged with stealing some tobacco from a railroad company. He was arrested on this charge and taken before a magistrate, who took bond for his appearance and continued the case for trial a few days later. Between the time of his arrest and the day when the case was set for trial in the examining court, Ethridge bought an ounce of carbolic acid from a druggist in the town where he lived and on the following morning he was found in his room dead.

There was evidence to the effect that he was a young man of ordinary intelligence, and that on the night before the day he took his life, and for several days previous thereto, his manner, habits and conversation were about as they had usually been. Witnesses said that they did not observe any change and that it had never occurred to them that his mind was not balanced.

Other witnesses, who were well acquainted with the deceased, said that for some weeks before his death, and especially after his arrest, they observed evidence of failing mental power, which they described.

Shortly before he took the poison he wrote and left in his room a short note addressed to his mother, telling her, in substance, that he was not guilty of the charge preferred against him.

Aside from the manner of his death it may well be doubted if there was sufficient evidence to show that the young man was insane. But considered in connection with the evidence of his curious, unnatural conduct observable for some weeks before his death, the fact that he took his life under the circumstances stated, furnished sufficient evidence that at the time his mind was so unbalanced as that he did not know or appreciate the quality of his act or on account of mental unsoundness did not have sufficient will-power to control his actions to authorize the submission of this issue to a jury.

The charge against him was not a serious one, although calculated to deeply humiliate and distress him, and it is hardly conceivable that he should have taken his life unless his mind was so unbalanced as to render him incapable of knowing or appreciating what he was doing.

We have written in a number of cases that a suicide clause like the one here in question will not avoid the policy if at the time the insured came to his death he was so insane that he did not know that he was taking his life or that the act he was committing would probably result in his death, or he did not have sufficient will-power to govern his actions by reason of some insane impulse the result of mental unsoundness. Bankers' Fraternal Union v. Donahue, 109 S. W., 878; Inter-Southern Life Ins. Co. v. Boyd, 124 S. W., 333; Modern Woodmen of America v. Neeley, 111 S. W., 282.

And we think there was sufficient evidence to take the case to the jury on the issue made and that the finding of the jury was not so flagrantly against the evidence as would authorize us to set it aside.

The instructions are complained of, but they are, in substance, the instructions approved in the cases cited and in many other like cases.

The judgment is affirmed.