UNITED STATES FIDELITY & GUARANTY CO. v. BLUM.*

(Circuit Court of Appeals, Ninth Circuit. July 7, 1919.)

No. 3239.

INSURANCE ⬤⟶446—LIFE POLICY—"SUICIDE, SANE OR INSANE."

An exception from liability for death by "suicide, sane or insane," in a life policy includes self-destruction irrespective of the assured's mental condition at the time of the act.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Suicide, Sane or Insane.]

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by Estelle M. Blum against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error. Reversed.

This is an action by Mrs. Blum, widow and beneficiary named in a life insurance policy issued by the United States Fidelity & Guaranty Company, plaintiff in error herein. The complaint alleged that Samuel Blum, the insured, died at Seattle through external, violent, and accidental means; that proofs of death were duly furnished, but that the insurance company denied liability. The policy of insurance provided for loss of life against "the loss or disability resulting from bodily injuries effected directly and independently of all other cause through external, violent and accidental means (excluding suicide, sane or insane, or any attempt thereat)." The insurance company pleaded that the death of Blum was effected through suicide, or an attempt thereat, and not otherwise. After verdict in favor of Mrs. Blum, judgment was entered against the insurance company, and writ of error thereafter brought the cause to this court.

The substance of the evidence was that Mr. Blum was a prosperous business man, and happy in his domestic affairs; that on January 1, 1917, certain of his property in Alaska was burned, and that the news of the fire

greatly depressed him for a time; that he did not sleep well, and was greatly worried about his business, and said he could not get the Alaska fire out of his mind; but that his condition of mind improved somewhat before January 12th, the day on which he died; that on that morning he and his wife went to a ship to see a friend sailing for Alaska; that later Mr. Blum went to his office, transacted some business there, and went to his home for lunch; that after lunch he took a nap and returned to his office; that he went to a barber shop, where he again seemed nervous and restless, and returned to his office about half past 4; that he walked up and down, and apparently was under mental strain and discouraged; that about 5 o'clock he complained to his associate that he could not collect his thoughts; that he stepped into his private office, leaving the door connecting with his outer office partly open; that his absence was noticed, and that immediately thereafter his body was found on the sidewalk two stories below. There was some testimony that a few days before his death he had had a fainting spell, and that he complained of feeling ill, and that when a feeling of faintness was coming upon him he would try to get fresh air. There was clear proof that he complained of lack of sleep, inability to collect his thoughts, and was more or less melancholy shortly before his death.

There is no positive evidence as to how he got out of the window, which was over 3 feet high from the floor, and had a sill 42 inches wide, and the lower sash being raised left an opening 2 feet 4½ inches wide and 2 feet 9½ inches high. But the contention of the plaintiff below was that he fell out involuntarily while trying to get air, and that his death was wholly involuntary and purely accidental, while the insurance company contended that he jumped out voluntarily, sane or insane, and that his death was suicide. As the case was properly for the jury, we need not dwell upon the evidence.

Peters & Powell, of Seattle, Wash., for plaintiff in error.

Preston, Thorgrimson & Turner and Lyons & Orton, all of Seattle, Wash., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The principal assignments of error are directed to the instructions of the court. The insurance company requested the following instruction:

"It appears from the undisputed evidence in this case that on the 12th day of January, 1917, some time in the neighborhood of 5 o'clock in the afternoon, Samuel Blum was in his office in the Pacific Block in the city of Seattle; that this office had an opening to the city street through a window or series of windows fronting thereon; that Blum was last seen alive in this room; that almost immediately thereafter his body was found lifeless on the sidewalk pavement, which he must have reached through this window opening of his office. The question, after all, for you to determine, then, is as to whether Blum came out of this window intentionally or unintentionally. If you are satisfied by a greater weight of evidence that it is more probable that he came out or through the window intentionally than that he did it by accident or unintentionally, then the burden of proof placed upon the defendant by the presumption of law existing against suicide will have been supported by the defendants, and your verdict should be for the defendant."

The court gave the instruction, but added the following:

"I don't think that that instruction could possibly mislead you, but to avoid any chance that it may, I wish to qualify it somewhat. It is stated therein that the question is as to whether he came out of the window intentionally or unintentionally. Now suicide is the intentional taking of one's life. Therefore, to constitute suicide on the part of Blum in jumping or throwing himself from that window, the following elements would be necessary: That is, that he voluntarily came through the window; that he knew when he did voluntarily come through the window that it would probably result in his death;

and that he did jump or throw himself from the window with the idea of ending his life and killing himself."

Counsel for the insurance company excepted to that part of the qualifying charge which stated in effect that one alleged to have committed suicide must know at the time that his act would probably result in death or in fatality.

The position of the insurance company is that by the qualification the jury were instructed that if they found that Mr. Blum was insane, and that he went through the window without a conscious intent of self-destruction, they could not find that he committed suicide.

A study of the opinions of the courts upon the subject of provisos and clauses similar to the one under consideration tells us that after the decision of the Supreme Court in 1872 in Insurance Co. v. Terry, 15 Wall. 580, 21 L. Ed. 236, wherein it was held that a proviso in a contract of life insurance against death by suicide did not include a self-killing which was not intentional, and that, when the deceased did not realize the physical nature and consequences of his act, and took his own life, being impelled by an irresistible, insane impulse, it was not his act, and no more than an accident, changes in the language of contracts of insurance were frequently made with a view of excluding a certain manner of death from the risk assumed by the insurers. The changed forms often provide that the insuring company does not assume the risk of self-destruction, sane or insane. In Bigelow v. Berkshire Insurance Co., 93 U. S. 284, 23 L. Ed. 918, the policy contained a condition of avoidance if the insured should die by suicide, sane or insane. The court said:

"The words of this stipulation 'shall die by suicide (sane or insane),' must receive a reasonable construction. If they be taken in a strictly literal sense, their meaning might admit of discussion; but it is obvious that they were not so used. 'Shall die by his own hand, sane or insane,' is doubtless a more accurate mode of expression; but it does not more clearly declare the intention of the parties. Besides, the authorities uniformly treat the terms 'suicide' and 'dying by one's own hand,' in policies of life insurance, as synonymous, and the popular understanding accords with this interpretation. * * * Life insurance companies indiscriminately use either phrase, as conveying the same idea. If the words 'shall commit suicide' standing alone in a policy import self-murder, so do the words 'shall die by his own hand.' Either mode of expression, when accompanied by the qualifying words, must receive the same construction. * * * Nothing can be clearer than that the words 'sane or insane' were introduced for the purpose of excepting from the operation of the policy any intended self-destruction, whether the insured was of sound mind or in a state of insanity. These words have a precise, definite, and well-understood meaning. No one could be misled by them; nor could an expansion of this language more clearly express the intention of the parties. * * * It is unnecessary to discuss the various phases of insanity, in order to determine whether a set of circumstances might not possibly arise which would defeat the condition. * * * For the purposes of this suit it is enough to say that the policy was rendered void if the insured was conscious of the physical nature of his act, and intended by it to cause his death, although, at the time, he was incapable of judging between right and wrong, and of understanding the moral consequences of what he was doing. * * * To say that the company will not be liable if the insured shall die by 'suicide, felonious or otherwise,' is the same as declaring its nonliability if he shall die by 'suicide, sane or insane.' "

In Clarke v. Equitable Assurance Society, 118 Fed. 374, 55 C. C. A. 200, the policy provided that—

"Self-destruction, sane or insane, within one year from the date of the issuance of the policies, is a risk not assumed by the society in this contract."

The Court of Appeals carefully reviewed the decisions, and concluded that the insurer was not liable. The reasoning was that the proviso had no words which limited its operation to intentional suicide, but that the insurer contracted that it would not assume the risk of self-destruction, sane or insane. To a contention that self-destruction would avoid the policy if the insured lacked intelligence to know that his act was wrong, but that the policy would not be avoided if he did not understand the physical nature of his act, the court said:

"To sustain such contention would require us to believe that the deceased shot himself through the head because he did not know that it would kill him. Instead of giving to the words of the proviso the plain meaning for which they were manifestly intended—that the insurer intended to guard itself from liability if the insured came to his death from any physical movement of his own, whether sane or insane—we would lose ourselves in consideration of the different phases of insanity, be compelled to split it into degrees, and to hold that, if he was so entirely insane as not to understand the physical consequences of his act, the proviso would be avoided, while a lesser degree of insanity would make the company liable."

In the more recent case of Moore v. Northwestern Mutual Life Insurance Co., 192 Mass. 468, 78 N. E. 488, 7 Ann. Cas. 656, the Supreme Court of Massachusetts referred to Bigelow v. Berkshire Life Insurance Co., supra, and pointed out that in the pleadings in that action a replication, alleging that the insured, when he inflicted the pistol wound upon his person by his own hand, was of unsound mind and wholly unconscious of his act, was held to be bad as against a demurrer, and quoted approvingly from De Gogorza v. Knickerbocker Life Ins. Co., 65 N. Y. 232. In that case the trial judge charged that if the act causing the death of the assured was an involuntary act of one incapable of exercising his will, then the company would be liable, but the Court of Appeals in New York held that such an instruction was erroneous, and that the words, "sane or insane," incorporated in the policy meant just what those words commonly import, "and that is, if death ensues from any physical movement of the hand or body of the assured proceeding from a partial or total eclipse of the mind, the insurer may go free." As specially pertinent to the case before us, the Court of Appeals said:

"We are not altogether unmindful of the force of the proposition that a man does not die by his own hand who has not sufficient mind to will his own death, and it is not, perhaps, entirely easy to see in what precise words in our language the idea may be accurately and artistically expressed that a totally insane man may take his own life. But the question seems to involve more—the refinement of language—than the application of practical sense, and we are of the opinion that, in the common judgment of mankind, it will be considered that when a totally insane man blows his brains out with a pistol that he will be said to have died by his own hand within the meaning of a policy such as we have now under consideration."

In the support of the approval of these views the Supreme Court of Massachusetts cites Travelers' Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308; Clarke v. Equitable Assurance Society, supra, and other cases. The conclusion of the court was that on reason and authority the words "sane or insane" cover every case of suicide, and that where self-destruction was clearly shown, it made no difference what the state of mind of the person committing the suicide was. In Billings v. Accident Co. of North America, 64 Vt. 78, 24 Atl. 654, 17 L. R. A. 89, 33 Am. St. Rep. 913, the policy provided that there would be no liability if death resulted from suicide, sane or insane, and the court held that this clause included self-destruction irrespective of the assured's mental condition at the time of the act, and that the court, in an action on the policy, would not attempt to measure the degrees of insanity. Adkins v. Columbia Life Ins., 70 Mo. 27, 35 Am. Rep. 410.

These opinions appear to us as logical and fair interpretations of the plain words used in the contract of insurance. If the insured fell out of the window by accident or in a faint, and was killed by the fall, of course there could be a recovery. But if he, of his own physical motion, went through the window and so destroyed himself, then under the contract the insurer can avoid liability, and it would matter not what the mental condition of the insured was. The effect of the qualification to the instruction quoted was a direction that, although death may have resulted from the physical act of going through the window, suicide could not be found unless deceased intended to kill himself, and knew that his act would probably result in death. And this we hold was a material error.

We cannot sustain the contention of the insured that the statutory definition of suicide as the "intentional taking of one's own life," found in the Criminal Code of the state of Washington (section 2385, vol. 1, Rem. & Bal. Ann. Codes) is controlling. That provision has to do with offenses against the public, but is not decisive in cases of private rights.

The judgment is reversed, and the cause is remanded, with directions to grant a new trial.

Reversed and remanded.