# National Life Insurance Company of Montpelier, Vermont v. Watson, Executrix.

(Decided March 24, 1922.)

## Appeal from Fayette Circuit Court.

Insurance—Death or Injury and Cause Thereof—Suicide—Instructions.—In a suit upon a life insurance policy which provided that the company would not be liable if the insured committed suicide while sane or insane, the company is liable though the insured killed himself, if at the time he was so bereft of reason or so insane as that he did not comprehend the nature of his act or its probable effect; but it is no avoidance of that clause that the act of self destruction was committed at a time when the insured was unable to govern his actions by reason of some insane impulse, since in that case the suicidal act was intended, from which the company is relieved under the stipulation against suicide while insane. It was therefore error for the court to add to its instruction authorizing a recovery "if the jury believe from the evidence that the said decedent was so insane that at the time of his act he was unable to govern his actions by reason of some insane impulse."

WILLIAM MARSHALL BULLITT, BRUCE & BULLITT and HUNT & BUSH for appellant.

HAGER & STEWART and ALLEN & DUNCAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On April 3, 1914, the appellant and defendant below, National Life Insurance Company, of Montpelier, Vermont, issued upon the life of Dr. W. G. Watson of Huntington, West Virginia, two policies, one for $2,000.00 and the other for $3,000.00, and each was made payable to his estate. In the applications which the insured signed to procure the policies and which were attached to them there was this stipulation:

"If, within one year from the date of the policy, I shall suicide or destroy myself, sane or insane, the policy shall be null and void and the company discharged from liability except for the premium paid."

On the morning of December 26, 1914, less than nine months after the date of the policies, the insured died from a self administered hypodermic injection of morphine. He had executed his will, in which his wife and plaintiff below, Inez Wall Watson, was appointed as executrix, and she qualified after the will was probated and

took the necessary steps to collect the policies, but the company declined to pay any part of either of them, except the premiums paid, upon the ground that the quoted clause from the applications relieved it therefrom.

At the trial there was a verdict and judgment in favor of the plaintiff for the full amount sued for and this appeal seeks a reversal thereof, chiefly upon the ground that the court misinstructed the jury by attaching to instruction No. 1 this clause: "or if the jury believe from the evidence that the said decedent was so insane that at the time of his act he was unable to govern his actions by reason of some insane impulse, the jury should find for the plaintiff." The first part of that instruction told the jury that if they believed the insured "came to his death from the effects of an overdose of morphine injected into his arm by himself, without suicidal intent; or if his death was so caused and the jury believe at the time he so injected morphine into his arm he was so insane that he did not know he was taking his life or that his act in so doing would probably result in his death . . . the jury should find for the plaintiff." There was sufficient evidence in the case to support the instruction as last quoted, and the question presented is whether the court erred in incorporating in it the "insane impulse" clause. Our opinion is that it was error to do so, which we will now proceed to demonstrate.

The history of the defense of suicide by the insured under a life policy is (a), that if the act is committed while the insured is sane it will be a defense to a recovery on the policy, although there is no stipulation in it against suicide. Mooney v. Ancient Order United Workmen. etc., 114 Ky. 950; Hunziker v. Supreme Lodge, etc., 117 Ky. 418, and Ritter v. Mutual Life Insurance Co., 169 U. S. 139. If, however, the self-destruction was inflicted when the insured was insane the defense of suicide would not prevail. Notwithstanding that condition of the law insurance companies began to insert in their policies (b) a stipulation against suicide without the qualifying words "sane or insane" which, it was held, did not substantially change the rights of the parties, since the act of self destruction without a stipulation containing those words would constitute a defense only when the insured was sane, and that the stipulation against suicide *simpliciter* referred only to the act of a sane mind. St. Louis Mutual Life Insurance Co. v. Graves, 6 Bush 268; Mutual Benefit

Life Insurance Co. v. Daviess's Executrix, 87 Ky. 541; Manhattan Life Insurance Co. v. Beard, 112 Ky. 455; Connecticut Life Insurance Co. v. Akens, 150 U. S. 468, and 14 R. C. L., pages 1228-1231, inclusive.

In order to avoid the construction of the courts in classifications (a) and (b) above, insurance companies began to insert in their policies stipulations against suicide, "sane or insane," and many courts, including this one, have construed such clauses to mean that the company is excused from payment where the insured takes his life in all cases, except where he was so devoid of mind at the time that he did not realize or contemplate the nature of his act and the physical consequences thereof. In other words, that he was so devoid of mind that he did not know what he was doing and did not intend to commit the act which resulted in his death, and with the exception of some dictum (hereafter to be noted) the above has been the consistent holding of this court from the time the "sane or insane" clause was first presented for consideration, as will be seen from the Daviess and Beard cases, *supra,* and those of Masonic Life Insurance Co. v. Pollard, 121 Ky. 349; Metropolitan Life Insurance Co. v. Thomas, 32 Ky. L. R. 770; Modern Woodmen of the World v. Neeley, 33 Ky. L. R. 758; Inter-Southern Life Insurance Co. v. Boyd, 124 S. W. 333 (not elsewhere reported); Bankers Fraternal Union, etc. v. Donahue, 33 Ky. L. R. 196; Vickers v. Aetna Life Insurance Co., 158 Ky. 1; Soverign Camp Woodmen of the World v. Landrum; 158 Ky. 841; Sovereign Camp Woodmen of the World v. Valentine, 173 Ky. 182; Security Life Insurance Co. of America v. Duncan, 184 Ky. 443, and Columbian National Life Insurance Co. v. Wood, 193 Ky. 395.

In the last cited case the identical questioned raised by this appeal was before this court. The court therein instructed the jury to find for plaintiff if it believed from the evidence that at the time the insured shot himself, if he did so, "he was so insane that he did not know that he was taking his life, or if the jury should believe from the evidence *that his act of self destruction was the result of an irresistible impulse over which his will had no control and that such act of self destruction was not an act of his volition."* On appeal the company insisted that the italicized portion of the instruction was erroneous, and in reply thereto the opinion quoted it and said:

"This much of the instruction must be conceded to be erroneous. The trial court should not have so instructed the jury, and had the quoted words been omitted from instruction number 1, the instruction would not have been subject to more than passing citicism."

But, it is insisted by appellee's counsel that this court in the cases of Sovereign Camp Woodmen of the World v. Ethridge, 166 Ky. 795, and Fidelity Mutual Life Insurance Co. v. Cochran, 187 Ky. 430, approved the above italicised clause as embodying the correct rule in such cases, and that under those opinions the stipulation against suicide "sane or insane" is no defense if the act of self destruction was the result of an irresistible impulse produced by insanity though an intention to commit it existed. It must be admitted that those opinions, on their face, possess the comprehensiveness contended for, but we have examined the record in each of them and find that the statements therein enlarging the rule, as claimed by appellee's counsel, were entirely unauthorized and are pure dictum.

The instruction complained of in the Ethridge case was somewhat confused but it was qualified with the statement that the company was liable if the insured, at the time of taking his life, "did not have sufficient will power to govern his actions by reason of some insane impulse, the result of mental unsoundness, that caused him to take his life *and rendered him incapable of realizing the consequences of his act."* It might have been held that the italicized portion of the instruction relieved the preceding objectionable features of the quotation from it, and thus rendered it unnecessary for the broad statement contained in the opinion upon which counsel for appellee relies, since the mental unsoundness was required to be such as "rendered him (insured) incapable of realizing the consequences of his act." But, whether so or not, that opinion, as expressed on its face, is out of line with all preceding cases from this court as well as succeeding ones, except the Cochran case, which itself has been succeeded by others, especially the Wood case, repudiating the contention now made.

The Cochran case followed the Ethridge opinion, and an examination of the record shows that neither in the evidence nor in the instructions was the question raised as to the liability of the company if the insured committed suicide under the influence of an irresistible impulse. None of the witnesses was asked any such ques-

tion, nor did the single instruction given in the case contain any such submission, and the statements in the opinion upon which reliance is now made was the result of an oversight and are likewise dictum.

In the case of Jefferson v. New York Life Insurance Co., 151 Ky. 609, it is said that "there is nothing peculiarly sacred about a contract of insurance, which places it upon a plane above, or different from, that upon which other contracts rest." This is but saying that parties to an insurance contract may insert therein any valid stipulation that may be agreed upon and it will be enforced by the courts, although it is the rule to construe them, when ambiguous, most strongly against the insurer.

It is, therefore, competent for the parties to such a contract to agree that liability will not attach if death is produced by suicide although the insured be insane when it is committed. The theory upon which the plaintiff may recover, if the insured did not know at the time the physical consequences of his act, as held in the cases, *supra,* from this court, rests upon the idea that he did not in law commit it. If the further circumscribing rule is adopted, as contended for and as the trial court did in this case, there could be no act of the insured which would relieve the company from payment when death was produced by suicide resulting from insanity, since a self destruction committed when it was not intended, and one committed under an irresistible impulse, both together, include all the elements and cover the entire field of insanity, and the stipulation against such suicides would be reduced to nothing, and, as heretofore shown, the company would occupy no better attitude than if no stipulation with reference to suicide had been made; for, as we have seen, suicide while sane is a defense to a recovery on the policy though it is entirely silent on the subject. We do not feel that we should extend the doctrine any further than is contained in the cases, *supra,* and the dictum in the Ethridge and Cochran cases should not be followed. Upon another trial the complained of portion of instruction number 1 should be omitted therefrom, and another instruction should be given embodying the idea contained in number 6, offered by defendant.

Complaint is also made of the refusal of the court to permit F. H. Yates, a witness introduced by defendant, to detail a certain conversation with the deceased upon which the opinion of the witness as to his mental condition was partially based. We do not think the court erred

in its ruling for two reasons, (1) the witness was introduced by defendant, and he showed sufficient acquaintance from association with the deceased to form a correct opinion without detailing the facts upon which his opinion was based, and (2) the conversation related to delicate family affairs and defendant was not compelled to inquire into it in order to obtain the opinion of the witness.

For the reasons indicated the judgment is reversed with directions to grant a new trial and for proceedings consistent herewith.