**AETNA LIFE INSURANCE COMPANY,**
Petitioner,

v.

**Winifred H. McLAUGHLIN, Respondent.**

No. A–9838.

Supreme Court of Texas.

June 3, 1964.

Rehearing Denied July 8, 1964.

Fouts, Moore, Williams & Caldwell, T. J. Caldwell, Jr., Houston, for petitioner.

Bracewell, Reynolds & Patterson, William H. White, Houston, for respondent.

NORVELL, Justice.

This is a suit upon an accident insurance contract which contained a clause excluding any loss caused by "suicide, sane or insane." [1] The controlling issue is whether Texas does or should follow the

---

1. The applicable exclusion read as follows: "Insurance under this policy shall not cover any loss caused directly or indirectly; wholly or partly, or contributed to substantially, by bodily or mental infirmity; or ptomaines; or bacterial infections (except pyogenic infections which shall occur through an accidental cut or wound); or any other kind of disease; or medical or surgical treatment (except such as may result directly from surgical operations made necessary solely by injuries covered by this policy); or war, or any act of war; or suicide, sane or insane."

majority rule as to the construction of the suicide clause of the policy as opposed to the Kentucky or minority rule.

The older forms of insurance contracts contained exclusions as to death by suicide and it was generally held that an act of self destruction committed by an insane person did not come within the exclusion.[2] As a result of such holdings, the suicide exclusion was expanded so as to include the words "suicide, sane or insane," or words having substantially the same meaning.

The majority view is that for an act to be "suicide, sane or insane," it is not necessary for the decedent to have realized the physical nature or consequences of his act, nor that he have had a conscious purpose to take his life. If the act be one which would be regarded as suicide in a sane person, the loss occasioned thereby would come within the exclusion, regardless of whether the insured decedent realized or was capable of realizing that such act would cause his death, and regardless of whether he was capable of entertaining an intention to kill himself. Annotation, Insurance—Suicide, "Sane or Insane" 35 A.L.R. 160, 1. c. 166.

The Kentucky rule is that consciousness of the physical nature and consequences of the act and an intention to kill oneself are essential to invoke the "suicide, sane or insane" exclusion. 35 A.L.R. 160, 1. c. 174.

The difference between the two doctrines stems from divergent concepts of the word, "suicide." The majority view accepts a broad popular definition of the term as covering any act of self destruction. The minority view is essentially a criminal law or technical concept in that understanding and intent are deemed essential elements of a suicide.

The Court of Civil Appeals was of the opinion that the parties tried the case in the District Court "on the theory of the minority rule."[3] This matter is controlled by the legal sufficiency of an objection to the special issue submitted by the trial court. While the objection is not as clearly and concisely worded as might be desired, we regard it as being sufficient to raise the contention that the majority rule relating to the construction of the exclusion is in force in Texas and that the issue submitted, together with its accompanying definition did not properly submit such rule.

2. In Mutual Life Insurance Co. v. Terry, 15 Wall. 580, 21 L.Ed. 236 (1872) the insured took poison and there was evidence that at the time he took poison he was insane. The policy provided against recovery if the insured should "die of his own hand." The Court said:

"We hold the rule on the question before us to be this: If the assured being in the possession of his ordinary reasoning faculties, from anger, pride, jealousy, or a desire to escape from the ills of life, intentionally takes his own life, the proviso attaches, and there can be no recovery. If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, consequences, and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse, which he has not the power to resist, such death is not within the

contemplation of the parties to the contract, and the insurer is liable."

See also, Mutual Life Ins. Co. of New York v. Walden, Tex.Civ.App., 26 S.W. 1012, no wr. (1894).

3. As to the trial of a cause upon incorrect issues in the absence of proper objection, see, Allen v. American National Insurance Co., Tex.Sup., 380 S.W.2d 604, which quotes with approval the following from Panhandle & Santa Fe Ry. Co. v. Friend, Tex.Civ.App., 91 S.W.2d 922, no wr.:

"Where, however, the ground (of recovery or defense) is submitted, however erroneously or incompletely, the parties are thereby put upon notice that the jury's answers to the issues actually submitted will form the basis of the court's judgment thereafter to be rendered thereon. It then becomes the duty of each party to point out errors of omission or commission, or be held estopped from thereafter urging them."

The District Court's judgment[4] awarding the plaintiff-respondent, Winifred H. McLaughlin, the widow of Washington L. McLaughlin, a recovery upon the insurance policy was based upon the jury's answer to one special issue which, with its accompanying definition, read as follows:

"Do you find from a preponderance of the evidence that the death of W. L. McLaughlin was not the result of suicide?

"You are instructed that by suicide is meant intentional self destruction and that one may commit suicide although insane or intoxicated so long as the act is the result of the exercise of his own will in any degree, and he understands the nature and probable consequences of his act."

(The jury answered, "It was not the result of suicide.")

The objection made to the Court's definition of suicide was as follows:

"Each and all of the defendants (there were other defendant insurers under other policies who have not appealed) object to the Court's definition of the term suicide for the reason that it fails to advise the jury that in order for an act to be suicide it is not necessary that the person so committing suicide have a rational understanding of the nature and probable consequences of his act, and for the further reason that the phrase contained in such definition reading 'and he understands the nature and probable consequences of his act' is unnecessary and constitutes a comment on the evidence and should be stricken from such definition,

4. The Court of Civil Appeals affirmed the judgment of the District Court. Its opinion is reported in Volume 370 at page 229 of the Southwestern Reporter, Second Series.

5. "The jury could have reasonably concluded that deceased did not deliberately

and the defendants move that such phrase be stricken from the definition."

The definition as given requires that one must understand the nature and probable consequences of his act before the jury can find that death resulted from suicide. The objection asserts that it is not necessary that the person committing suicide have a rational understanding of the nature and probable consequences of the act which results in death. We think the objection was sufficient to direct the trial judge's attention to the concept of suicide embodied in the majority rule heretofore mentioned. The term "suicide" as used in the charge necessarily has reference to the provisions of the policy and therefore the question was raised as to whether or not it is essential under the law of this State that a person understand the nature and probable consequences of his act before his beneficiary may be barred under the "suicide, sane or insane" exclusion of an accident insurance policy.

The opinion of the Court of Civil Appeals contains a complete statement of the evidence, 370 S.W.2d 229, and we need not repeat the same here. The insured, Washington L. McLaughlin, was undoubtedly an unhappy and deeply troubled man immediately prior to his death. He was killed upon a highway near Houston, Texas, in the nighttime, when he lunged in front of a moving school bus or fell in front of the same. He had been drinking heavily and was undoubtedly intoxicated at the time of his death, but still retained the power of movement and was walking along and on the highway.

■ The evidence as we view it and as it was considered by the Court of Civil Appeals is sufficient to support the theory that McLaughlin met his death by accident.[5]

lunge in front of the bus in order to kill himself, but rather was attempting to cross the highway and on seeing the oncoming bus became confused and at the last moment lunged to get across the road ahead of the bus." Opinion, Court of Civil Appeals, 370 S.W.2d 229, 235.

On the other hand, the evidence is sufficient to support the theory that McLaughlin threw himself directly in the path of an oncoming bus,—an act which, if done by a sane man, would be considered suicide. And, there was sufficient evidence, as stated by the Court of Civil Appeals, to "raise the issue of temporary insanity produced by the drinking of intoxicants." 370 S.W. 2d 229, 235.

We are here concerned with the insanity issue. The only exception to the coverage of the accident policy effectively invoked by the insurance company was the contention that McLaughlin's death was "caused by suicide." 370 S.W.2d 229, 231. The jury could have believed that McLaughlin's reason was so affected by temporary insanity that he possessed no appreciation of the consequences of his deliberately lunging or throwing himself in front of an oncoming bus. Under the definition of "suicide" given by the trial court such act would not be suicide within the meaning of the insurance policy.

Under the rule obtaining in the majority of the American jurisdictions, such act would be suicide within the meaning of the "suicide, sane or insane" exclusion clause.

■ It is our considered opinion that the majority rule should be followed. Those cases which have mentioned or discussed the problem in this State tend to support the majority rule, Illinois Bankers' Life Ass'n. v. Floyd, Tex.Com.App., 222 S.W. 967 (1920), Mutual Reserve Fund Life Ass'n. v. Payne, Tex.Civ.App., 32 S.W. 1063, no wr. (1895), Parish v. Mutual Benefit Life Ins. Co., 19 Tex.Civ.App. 457, 49 S.W. 153, wr. ref. (1898) and Brown v. United Moderns, 39 Tex.Civ.App. 343, 87 S.W. 357, no wr. (1905), which seems to be based upon the better reasoning. In the early case of De Gogorza v. Knickerbocker Life Ins. Co., 65 N.Y. 232 (1875), it was stated in the opinion that:

"We do not, however, place reliance upon them further than they appear to

be fortified by reason. We prefer to place our decision upon the ground that the words of the proviso in the policy before us, by plain rules of interpretation, exempts the defendant from liability. That this language, (sane or insane) in view of previous decisions, was inserted for such a purpose, cannot be doubted, and that it was agreed to by both the insured and the insurer is not questioned, and that it is a provision allowed by law, no one denies. We are to say from these words what the parties must have intended, and we cannot properly say that additional words having no meaning were inserted in the contract, and if they mean any thing it is just what the words commonly import, and that is, if death ensues from any physical movement of the hand or body of the assured proceeding from a partial or total eclipse of the mind, the insurer may go free. We are not altogether unmindful of the force of the proposition that a man does not die by his own hand who has not sufficient mind to will his own death, and it is not, perhaps, entirely easy to see in what precise words in our language the idea may be accurately and artistically expressed that a totally insane man may take his own life. But the question seems to involve more—the refinement of language—than the application of practical sense, and we are of the opinion that, in the common judgment of mankind, it will be considered that when a totally insane man blows his brains out with a pistol that he will be said to have died by his own hand within the meaning of a policy such as we have now under consideration."

In Clarke v. Equitable Life Assurance Society of the United States, Fourth Circuit, 118 F. 374 (1902), the Court said:

"It will be observed that the proviso under consideration contains no words limiting its operation to intentional sui-

cide. The company contracted that it would not assume the risk of self-destruction, sane or insane. The contention of the appellant is that self-destruction avoids the policy if the insured lacked intelligence to know that his act was wrong, but that it is not avoided if he did not understand the physical nature of his act. To sustain such contention would require us to believe that the deceased shot himself through the head because he did not know that it would kill him. Instead of giving to the words of the proviso the plain meaning for which they were manifestly intended,—that the insurer intended to guard itself from liability if the insured came to his death from any physical movement of his own, whether sane or insane,—we would lose ourselves in consideration of the different phases of insanity, be compelled to split it into degrees, and to hold that, if he was so entirely insane as not to understand the physical consequences of his act, the proviso would be avoided, while a lesser degree of insanity would make the company liable."

In United States Fidelity & Guaranty Co. v. Blum, Ninth Circuit, 258 F. 897 (1919), the Court considered a case similar to that before us in which the issue was accident or suicide. It was said that:

"If the insured fell out of the window by accident or in a faint, and was killed by the fall, of course there could be a recovery. But if he, of his own physical motion, went through the window and so destroyed himself, then under the contract the insurer can avoid liability, and it would matter not what the mental condition of the insured was. The effect of the qualification to the instruction quoted was a direction that, although death may have resulted from the physical act of going through the window, suicide could not be found unless deceased intended to

kill himself, and knew that his act would probably result in death. And this we hold was a material error."

 Similarly the true issue in this case was whether McLaughlin met his death by lunging or throwing himself in front of the bus or by accidently stumbling and falling in front of the vehicle. If he committed the act,—placing himself in front of the bus,—his beneficiary cannot recover, regardless of whether he appreciated the physical consequences of his act or not. The definition of the trial court was erroneous and in the light of the objection the judgments of the courts below must be reversed. See, Billings v. Accident Insurance Co., 64 Vt. 78, 24 A. 656, 17 L.R.A. 89, 33 Am.St.Rep. 913 (1892); Scarth v. Security Mutual Life Society, 75 Iowa 346, 39 N.W. 658 (1888); Scherar v. Prudential Insurance Company of America, 63 Neb. 530, 88 N.W. 687, 56 L.R.A. 611 (1902); Seitzinger v. Modern Woodmen of America, 204 Ill. 58, 68 N.E. 478 (1903); Moore v. Northwestern Mutual Life Ins. Co., 192 Mass. 468, 78 N.E. 488 (1906); Couch on Insurance (2d) § 40:42; Vance on Insurance § 95, p. 569.

The minority rule as stated in Inter-Southern Life Ins. Co. v. Boyd, Ky. Ct. of App., 124 S.W. 333 (1910) is that notwithstanding a "suicide, sane or insane" exclusionary clause in an insurance policy, a beneficiary may recover "where insured at the time he killed himself was so insane that he did not know that he was taking his life, or that the act he was committing would probably result in death." Among the cases supporting the minority rule are National Life Insurance Co. of Montpelier v. Watson, 194 Ky. 355, 239 S.W. 35, 35 A.L.R. 156 (1922); Muzenich v. Grand Carniolian Slovenian Catholic Union, 154 Kan. 537, 119 P.2d 504, 138 A.L.R. 818 (1944) and Christensen v. New England Mutual Life Insurance Company, 197 Ga. 807, 30 S.W.2d 471, 153 A.L.R. 794 (1944). Annotations covering the "suicide, sane or insane" exclusionary clause are set forth

following the reports of the three cases mentioned in the American Law Reports. See also, 24 Notre Dame Lawyer 92.

The opinion in the Christensen case, supra, following the dissent in De Gogorza v. Knickerbocker Life Insurance Co., 65 N.Y. 232, contains a good statement of the minority view. However, a concise and effective dissent was filed in Christensen. A portion of it may be quoted here:

"Therefore, the question is, where one laboring under an hallucination and in order to escape an imaginary peril commits an act which to a sane person would naturally result in his death, but which to the insane mind would not and did not suggest the natural consequences but did in fact result as a natural consequence in his death, does the contract provide that he, as an insane person, is to be held accountable for the natural consequences of his act just as though he were sane? We think that it does, else the provision of the policy as to insanity is without effect, and the floodgates are left wide open for fraud. Under the question propounded, the insured did not fall from the sixth story window, but purposely jumped in order to escape the consequences of an imaginary peril. Thus, whether sane or insane, the act was still the exercise of volition, and under the terms of the policy he is held accountable for his voluntary act just as though he were sane."

In our opinion, the minority rule would lead to confusion and attempts by courts to define varying degrees or aspects of insanity. The facts of *Christensen* suggest these hypotheses: A jumps out of the window of a room on the tenth story of a building because he is suffering from an insane delusion that he is being persecuted and he chooses death as an alternative to imagined future tortures. He knows, however, that his act will result in death. B, on the other hand, jumps out of a tenth story window because of an insane delusion that he possesses the power of flight. He does not realize or anticipate that his act will result in death. It is difficult to say that the contracting parties by adopting an exclusion of loss by "suicide, sane or insane" intended that B's beneficiary should recover, but that A's beneficiary should not. The broader exclusion afforded to the exclusionary clause by the majority rule is in no way obnoxious to public policy. The states which have adopted it have not changed therefrom. The cases which adopt the broader exclusion were decided many years ago and we must therefore assume that the rule has proved satisfactory and workable. The experience of the American jurisdictions is not to be lightly disregarded. And, further, and of most importance, we think the majority construction gives to the clause, in the light of its history, the plain common sense meaning of the words employed.

Other matters discussed in the briefs need not arise upon another trial. In view of the discussion with reference to expert testimony introduced upon the trial, we call attention to the theory of the opinion evidence rule as stated in McCormick and Ray:

"The modern and indeed the true theory of the Opinion rule is that of the exclusion of superfluous evidence. The witness may be competent and the sources of his information sufficient but his testimony is not needed. The principle rests entirely upon policy. It may be broadly states thus: Whenever the tribunal is in possession of the same information as the witness and the latter can add nothing to that information his further testimony is unnecessary and in fact merely cumbers the proceedings." McCormick and Ray, Texas Law of Evidence, § 1393.

Furthermore, an objection that proffered expert testimony "invades the province of the jury" gives the trial judge very little information as to the basis of the objection. McCormick and Ray, 2d Ed. § 1395.

For the reasons above stated, the judgments of the courts below are reversed and the cause remanded to the District Court for another trial.

GREENHILL, J., dissenting.

GREENHILL, Justice (dissenting).

I dissent. I agree substantially with the opinion of the Court of Civil Appeals. 370 S.W.2d 229.