596 P.2d 95

Mary E. NIELSEN, Plaintiff-Appellant,

v.

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant-Respondent.

No. 12725.

Supreme Court of Idaho.

June 8, 1979.

James G. Reid of Reid & Morfitt, Boise, for plaintiff-appellant.

Michael A. Greene of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for defendant-respondent.

SHEPARD, Chief Justice.

This is an appeal from a summary judgment in favor of defendant-respondent Provident Life and Accident Insurance Company in an action brought by plaintiff-appellant Mary Nielsen seeking to recover death benefits under an insurance policy on the life of her husband William Nielsen, who died as a result of a self-inflicted gunshot wound. We are required for the first time in Idaho to construe an insurance policy excluding benefits where death results from "suicide, while sane or insane." We affirm the judgment of the trial court.

William Nielsen, on January 14, 1976, purchased a Provident 20-year decreasing term life insurance policy with death benefits of $150,000.00. The primary beneficiary was Mary Nielsen. William Nielsen died on December 25, 1976, as a result of a self-inflicted gunshot wound to the head. The policy was at that time in full force and effect. It contained the following provision:

> "SUICIDE. If the insured should commit suicide, while sane or insane, within two years from the date of issue of this policy, the amount payable by the company, in place of all other benefits, will be the premiums paid without interest. This amount will be paid in one sum to the beneficiary."

Following the death of William Nielsen, Provident denied the policy death benefits and, rather, tendered the total premiums paid on the policy. Mary Nielsen brought this action for the recovery of the death benefits under the policy and Provident filed alternative motions to dismiss under I.R.C.P. 12(b)(6) and/or for summary judgment under I.R.C.P. 56. The trial court granted Provident's motion for summary judgment.

There appear to be no issues of fact presented to the trial court. Provident filed the affidavit of the Chief Deputy Coroner for Ada County, which stated that "the death of William Nielsen was not an accident but was suicide and that the cause of death was due to a deliberate and self-inflicted gunshot wound to the head." Nielsen admits decedent died as a result of a self-inflicted gunshot wound, but she filed an affidavit in opposition to summary judgment, stating:

"* * * * * *

2. That William S. Nielsen, affiant's deceased husband, was involved in an automobile accident on or about the 7th day of November, 1975.

3. That, as a result of the aforementioned automobile accident, William S. Nielsen suffered serious mental and physical injuries.

4. That, as a result of said injuries William S. Nielsen was, until the date of his death, under constant care of several doctors.

5. That said injuries caused William S. Nielsen, until the date of his death, to behave in an irrational manner. That said irrationality was markedly distinct from his behavior before said automobile accident."

Nielsen argues on appeal that the proximate cause of the death was the automobile accident and that the fatal self-inflicted gunshot wound was the result of an irresistible impulse of the decedent which was proximately caused by certain mental injuries received in the automobile accident 13 months prior to his death. There is no contention that the insured accidently shot himself.

When a motion to dismiss under I.R.C.P. 12(b)(6) is supported by affidavits and other materials, the motion may then properly be considered as one for summary judgment. I.R.C.P. 12(b); *Cook v. Soltman*, 96 Idaho 187, 525 P.2d 969 (1974). Upon motion for summary judgment, it is axiomatic that all facts and inferences arising are construed most favorably towards the party against whom summary judgment is sought. *Southern v. Southern*, 92 Idaho 180, 438 P.2d 925 (1968). If any genuine issue of material fact remains unresolved, summary judgment is improper. I.R.C.P. 56(c). *See also Joyner v. Jones*, 97 Idaho 647, 551 P.2d 602 (1976); *Gardner v. Hollifield*, 97 Idaho 607, 549 P.2d 266 (1976).

Provisions in insurance policies excluding or limiting the insurer's liability where injury or death results from suicide have usually been held valid. Annot., 9 A.L.R.3d 1015 (1966); Appleman, Insurance Law and Practice § 363 (1965). Such provisions are statutorily authorized in Idaho. I.C. § 41–1925(1)(b)(v).

Early cases interpreting suicide exclusions in insurance policies held that self-destruction while insane was not suicide because there could be no suicide unless the insured could form a conscious intention to kill himself and carry out the act, realizing its moral and physical conditions and consequences. Thereafter, and as a result of those cases, the suicide exclusion clauses were expanded so as to include the words "suicide, sane or insane," or words having substantially the same meaning. Annot., 9 A.L.R.3d 1015 (1966); 9 Couch on Insurance 2d §§ 40:39, 40:40 (R. Anderson ed. 1962). The effect of that change in policy language is demonstrated by the case of *Bigelow v. Berkshire L. Ins. Co.*, 93 U.S. 284, 23 L.Ed. 918 (1876), in contrast with the earlier case of *Mutual Life Ins. Co. v. Terry*, 15 Wall. 580, 21 L.Ed. 236 (1873). In *Bigelow* the court concluded that the proviso "suicide, sane or insane" effectively removed the necessity of grappling with the "shadowy and difficult to define" line between sanity and insanity, stating:

"Nothing can be clearer than that the words, 'sane or insane,' were introduced for the purpose of excepting from the operation of the policy any intended self-destruction, whether the insured was of sound mind or in a state of insanity. These words have a precise, definite, well-understood meaning. No one could be misled by them; nor could an expansion of this language more clearly express the intention of the parties. In the popular, as well as in the legal, sense, suicide means, as we have seen, the death of a party by his own voluntary act; and this condition, based, as it is, on the construction of this language, informed the holder of the policy, that, if he purposely destroyed his own life, the company would be relieved from liability."

93 U.S. at 287.

The numerical weight of authority states that in order for an insurer to avoid liability on the basis of a suicide clause with the words "sane or insane," it is not necessary for the insured to realize the physical nature or consequence of his act or to form a conscious purpose to take his life. If the act of self-destruction would be regarded as

suicide in the case of a sane person, it would be so treated as to an insane insured, regardless of whether the insured realized or was capable of realizing that such an act would cause his death or whether he could form an intent to kill himself. *See Atkinson v. Life Ins. Co. of Virginia*, 217 Va. 208, 228 S.E.2d 117 (1976); *Bigelow v. Berkshire Life Ins. Co., supra; Johnson v. Metropolitan Life Ins. Co.*, 404 F.2d 1202 (3rd Cir. 1968); *United States Fidelity & Guar. Co. v. Blum*, 258 F. 897 (9th Cir. 1919); *Aetna Life Ins. Co. v. McLaughlin*, 380 S.W.2d 101 (Tex.1964); *Moore v. Northwestern Mut. Life Ins. Co.*, 192 Mass. 468, 78 N.E. 488 (1906). *See also* Annot., 9 A.L.R.3d 1015 (1966), and cases collected therein; 9 Couch on Insurance 2d § 40:42 (R. Anderson ed. 1962).

In a minority of jurisdictions, it is held that a policy exclusion for "suicide, sane or insane" is not operative absent an intent by the insured to kill himself and such intent could not be formed by the insured if he were so far insane as to be without appreciation of the physical consequences of his action or without power to resist the disordered impulse that caused him to take his own life. 9 Couch on Insurance 2d § 40:42 (R. Anderson ed. 1962). *See Christensen v. New England Mut. Life Ins. Co.*, 197 Ga. 807, 30 S.E.2d 471 (Ga.1944); *New York Life Ins. Co. v. Dean*, 11 S.W.2d 417 (Ky. App.1928). *See also* Annot. 9 A.L.R.3d 1015 (1966).

The divergent lines of authority stem from varying concepts of the term "suicide." The majority view adopts a plain meaning and popular definition of the term as covering any act of self-destruction. The minority views the term in essentially a criminal law or technical concept holding that understanding and intent are deemed essential elements of a suicide. *See* Annot., 9 A.L.R.3d 1015 (1966). In *Aetna Life Ins. Co. v. McLaughlin, supra* at 106, it was stated:

"In our opinion, the minority rule would lead to confusion and attempts by courts to define varying degrees or aspects of insanity. * * * The broader exclusion

afforded to the exclusionary clause by the majority rule is in no way obnoxious to public policy. * * * [F]urther, and of most importance, we think the majority construction gives to the clause, in light of its history, the plain common sense meaning of the words employed."

*See Atkinson v. Life Ins. Co. of Virginia, supra* 228 S.E.2d at 120.

Nielsen argues that the exclusion of liability for suicide, sane or insane, does not exclude liability for a self-destructive act resulting from an irresistible impulse. We disagree. *See Johnson v. Metropolitan Life Ins. Co., supra*; Annot., 9 A.L.R.3d 1015 (1966), and cases collected therein. *See generally* 9 Couch on Insurance 2d § 40:45 (R. Anderson ed. 1962).

■ In Idaho an insurance contract is to be construed most favorably to the insured and in such a manner as to provide full coverage for the indicated risks, and a construction of the insurer's contract will not be sanctioned which will defeat the very purpose or object of the insurance. *Erikson v. Nationwide Mut. Ins. Co.*, 97 Idaho 288, 543 P.2d 841 (1975); *Corgatelli v. Globe Life and Accident Ins. Co.*, 96 Idaho 616, 533 P.2d 737 (1975); *Toevs v. Western Farm Bureau Life Ins. Co.*, 94 Idaho 151, 483 P.2d 682 (1971). However, where a word or phrase used in an insurance contract has a settled legal meaning or interpretation, that meaning or interpretation will be given effect although other interpretations are possible. *Stein-McMurray Ins. Inc. v. Highlands Ins. Co.*, 95 Idaho 818, 520 P.2d 865 (1974); *Rosenau v. Idaho Mut. Benefit Ass'n.*, 65 Idaho 408, 145 P.2d 227 (1944). A new liability not assumed by the insurer will not be created, nor will a new contract be made for the parties. *Occidental Fire and Cas. Co. v. Cook*, 92 Idaho 7, 435 P.2d 364 (1967); *Thomas v. Farm Bureau Mut. Ins. Co. of Idaho, Inc.*, 82 Idaho 314, 353 P.2d 776 (1960); *Miller v. World Ins. Co.*, 76 Idaho 355, 283 P.2d 581 (1955).

■ We find the reasoning of what appears to be the majority view persuasive. The self-destructive act of the decedent here constituted either a "sane or insane"

suicide and was expressly excluded under the terms of the insurance contract. The fact that decedent may have suffered from a mental aberration caused by an automobile accident does not remove the act of self-destruction from the plain language of the policy excluding liability. The cause of the mental aberration is irrelevant to the applicability of the exclusionary language. The decedent's self-destructive act would clearly have constituted an act of suicide in the case of a sane person and thus remains a "suicide" under the language of the policy in the case of an insane person or one suffering a mental aberration. On the facts presented here, there is no question of "accidental" self-destruction and it is admitted that death resulted from a self-inflicted gunshot wound. Therefore, even construing all the facts and inferences in favor of the plaintiff Nielsen, as we are required to do on a motion for summary judgment, we hold there is no liability on the part of Provident under the terms of the insurance policy.

The judgment of the district court is affirmed.

DONALDSON, BAKES and BISTLINE, JJ., and SCOGGIN, J. pro tem., concur.