Case  43.—ACTION  BY  ANNIE  POLLARD'S  GUARDIAN
AGAINST THE MASONIC LIFE ASSOCIATION OF WEST-
ERN NEW YORK ON A POLICY OF LIFE INSURANCE.—
October 31.

## Masonic Life Association of Western New York
## v. Pollard's Gd'n.

Appeal from Trigg Circuit Court.

Thos. P. Cook, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Re-
versed.

1. Evidence—Presumptions—Suicide—Where the circumstances
   surrounding a death are such as to admit of the conclusion
   either that the death was self-inflicted or not, there
   is a presumption against suicide.
2. Same—Where the fact that a death was intentionally self-
   inflicted is proved, and that deceased was in a normal
   condition of mind, there can be no presumption that the
   act was unintentional, or that the result of that insanity
   which deprives the mind of its knowledge of the probable
   effect of the act upon life.
3. Insurance—Life Insurance—Suicide—Insanity—Where an in-
   sured intentionally takes his life at a time when his mind
   is so far gone as to render him unconscious that he is tak-
   ing his life, the death will be regarded as accidental, and
   not within a provision of the policy exempting the insurer
   from liability in case of suicide.
4. Same—Though the mind of insured may have been deranged
   when he took his life, if he had mind enough to know that
   the act would probably result in death, it is suicide, within a
   clause of the policy exempting the insurer from liability
   in case of suicide.

ROBERT CRENSHAW and HARRY D. WILLIAMS for ap-
pellant.

1. We submit that the proof in the case established the fact,

as strong as human testimony could well do so, that the as-
sured, Pollard, came to his death from his own hand; and there
was no evidence introduced by the plaintiff to establish the fact
that his mind then or ever was affected. On the contrary, the
proof showed that he was in the exercise of his business, col-
lecting taxes, writing and mailing letters to within three min-
utes of the time he shot himself. This is a case where the evi-
dence is so strong of suicide as to exclude the inference of an
accident, and to warrant the lower conrt in giving a peremptory
instruction directing the jury to find for the defendant.

2. The insured was sane at the time he shot himself. The
law presumes every man to be of sane mind unless the contrary
be proven. (1 Greenleaf on Evidence, sec. 42, citing Brooks v.
Barnet, 7 Pick., 94 [Mass.]; Weed v. Mut. Ben. Life Ins. Co.,
70 N. Y., 561; People v. O'Connell [N. Y.], 13 Weekly Dig.,
536.)

3. The fact of suicide creates no presumption of insanity.
There must be other circumstances, such as melancholia, de-
lusions and the like, connected with the suicide, before it can
be considered as one of the links in the chain of proof. (Wig-
more on Evidence, sec. 2500, sub. C.; Dickerson v. Northwest-
ern Mut. Life Ins. Co., 65 N. E., 694, 200 Ill., 270; Mutual Bene-
fit Life Ins. Co. v. Daviess' Ex'or, 87 Ky., 541; 19 Am. & Eng.
Ency. of Law, 2d Ed., pp. 76 and 77; Grand Lodge I. O. M. A. v.
Wieting, 168 Ill., 408; Supreme Lodge O. M. P. v. Gelbke, 198
Ill., 365; Life Ins. Co. v. Terry, 15 Wall., 580; Bigelow v. Berk-
shire Life Ins. Co., 93 U. S., 284; Home Ben. Ass'n v. Sargent,
142 U. S., 691.)

· The refusal of the trial judge to instruct the jury to find for
the defendant was error. The rule of law controlling in cases
similar to the one at bar seems well established in this State.
Briefly stated, it seems to be the rule that, where a policy of
insurance provides that it shall become void if the assured
should "die by his own hand or act, sane or insane," there can
be no recovery in case of suicide, unless the insured was so in-
sane at the time as not to know that he was taking his life.
(Mutual Benefit Life Ins. Co. v. Daviess' Er'or, 87 Ky., 541;
Manhattan Life Ins. Co. v. Beard [Ky.], 66 S. W., 35; Supreme
Council v. Heineman [Ky., 1904], 78 S. W., 406.)

JAMES B. GARNETT for appellee.

J. W. KELLY and R. A. BURNETT of counsel.

1. No suggestion is made by appellant of a reason or motive
for Pollard intentionally killing himself, except that it is claimed

that he was short in the collection of the State and county reve-
nue. Now we suggest that, conceding that he was at that time
in default in the collection and paying over of the public reve-
nue to the amount claimed by appellant, yet this affords no sen-
sible or reasonable motive on his part for voluntary taking his
own life. Just how this shot was fired the evidence in this case
fails to show. Whether it was intentionally or accidentally, in
some way, fired, the evidence fails to disclose.

2. The sole question in the case is, whether the shot was ac-
cidentally or intentionally fired. This question, we think, in apt
language was submitted to the jury in the brief instructions of
the court. It was a question for the jury, under all the facts
proven in the case.

3. The presumption of law is against suicide in such a case as
contrary to the general conduct of mankind.


                          AUTHORITIES CITED.

Aetna Life Ins. Co. v. Kaiser, 24 Ky. Law Rep., 2454; Union
Casualty & Surety Co. v. Goddard, 25 Ky. Law Rep., 1935; Aetna
Life Ins. Co. v. Milward, 26 Ky. Law Rep., 591; Fidelity & Cas-
ualty Co. v. Freeman, 109 Fed. Rep., 847; American Benevolent
Association v. Stonger, 26 Ky. Law Rep., 1093.


OPINION BY JUDGE O'REAR—Reversing.

This is an action on a policy of life insurance. Ap-
pellant insured the life of N. B. Pollard in the sum of
$2,000. One of the conditions named in the policy
upon which it was to be avoided is, if the insured
should "die by his own hand or act, sane or insane,
within three years from the date of issue of this
certificate, then this agreement shall cease and be of
no effect." Within three years from the date of the
policy the assured killed himself. The act occurred
in his office in the town of Cadiz, in the presence of
one person, and so nearly in the presence of at least
two others that they saw his body before it had fallen
after the fatal shot was fired into his head. N. B.
Pollard was at the time sheriff of Trigg county. The
suicide occurred on December 2, 1901. At the pre-
vious October term of the fiscal court of Trigg county

he had failed to complete the settlement of his accounts as sheriff, and a called term of the fiscal court was to be held on that day, December 2d, to complete the settlement. The commissioner appointed by the court had reported a deficit amounting to several thousand dollars in the accounts of the sheriff. As a matter of fact, as was shown by the judgment in favor of the county against the sureties of N. B. Pollard as sheriff, subsequently rendered, he was in default to the county about $2,300. It also appears that he was at the time a candidate for the office of county court clerk of Trigg county. About a week before his death he handed his life insurance policy and his will to a friend, to be deposited in his vault, with the request that "if anything happened to him" he wanted this friend to see that his children got those papers for the benefit of them. Nothing in the actions of Pollard had indicated any mental derangement then. He was about his business as usual. On the morning of the suicide he transacted business with a number of persons. He collected taxes and gave receipts therefor. He wrote business letters and mailed them, and inclosed checks—one of $4,000 being inclosed to the State Auditor in payment of the State revenue collected by him as sheriff. He deposited about $1,400 in bank that morning. In all he did, and in all he said, so far as the record discloses, he was in full possession of his mental faculties. His domestic relations were pleasant. He had no disease, nor was there any sickness or other cause of disturbance in his family, so far as the record shows. After completing certain business transactions, including those above mentioned, and shortly before the hour at which the fiscal court was to convene to complete his settlement, he deliberately shot himself through the head;

at least, such is the inevitable conclusion from the proof in this case, all of which is one way.

At the conclusion of the evidence appellant asked that the jury be peremptorily instructed to find for it. But the motion was overruled. This was error. The law presumes every man to be sane until the contrary is shown. Likewise the law indulges a presumption against suicide as being unnatural and immoral. But presumptions of this nature are indulged necessarily in the absence of proof. When the evidence shows and the fact is that the act of suicide was committed when the person was in sound mind, no presumption whatever can be indulged. It ceases to be a presumption and becomes a proven fact. Where the dead body is discovered in the presence of the implement of death, and the surroundings are such as admit of the conclusion either that it was self-inflicted or not, or was intentionally done or not, the evidence being wholly circumstantial, then the presumption against suicide, that is intentional self-destruction, applies. Where, however, there are eyewitnesses to the occurrence, whose testimony established the fact to be that the act was intentional; that the person was in a normal condition of mind; that he was not insane; that the motive probably influencing his action was the fear of disgrace, or of punishment for some past act, about to be disclosed, or which had been recently discovered, then it would be illogical and contrary to the judgment and observation of mankind to say that the act was to be presumed in law to have been unintentional or the result of that insanity which deprives the mind of its knowledge of the probable effect of the act upon life. When all the evidence is one way, the natural result of which is to establish a fact in con-

troversy, there is nothing to be submitted to the jury, as only controverted propositions are submitted to them; that is, propositions about which there is a conflict in the evidence.

The court instructed the jury in this language: "The court instructs the jury that they will find for plaintiff the sum of $2,000, with interest from the 2d day of April, 1902, unless they shall believe from the evidence that the insured, N. B. Pollard, intentionally took his own life, and that at the time he did so he had sufficient mind to contemplate the consequences of the act resulting in his death, in which case they will find for the defendant." The instruction is erroneous. On the contrary, the law is that if the insured intentionally took his own life, at a time when his mind was so far gone as to render him unconscious that he was taking his life, the act will not be deemed his, but will be regarded in law as an accidental killing. The converse is equally true— that although his mind may have been deranged, still if he had mind enough to know that the act would probably result in his death, and if he inflicts it with that intention, it is his act in law, for which the company is not responsible under the clause of this policy. (Mut. Ben. Life Ins. Co. v. Daviess' Ex'or, 87 Ky., 541, 10 Ky. Law Rep., 577, 9 S. W., 812; Manhattan Life Ins. Co. v. Beard, 112 Ky., 455, 23 Ky. Law Rep., 1747, 66 S. W., 35; Supreme Council v. Heineman, 25 Ky. Law Rep., 1604, 78 S. W., 406; Bigelow v. Berkshire Life Ins. Co., 93 U. S., 284, 23 L. Ed., 918.)

Wherefore the judgment is reversed and cause remanded, with directions to grant appellant a new trial under proceedings not inconsistent herewith.