LADWIG, Respondent, vs. NATIONAL GUARDIAN LIFE INSURANCE COMPANY, Appellant.

*February 10—March 7, 1933.*

58

For the appellant there was a brief by *Olin & Butler,* and oral argument by *Clifford G. Mathys,* all of Madison.

For the respondent there was a brief by *Hougen & Brady* of Manitowoc, and oral argument by *A. L. Hougen.*

ROSENBERRY, C. J. Under the earlier forms of policies which contained the provision that there should be no recovery in case of suicide or in case the insured died by his own hand, it was generally held that death self-caused in an uncontrollable frenzy, without knowledge or appreciation of the physical nature of the act, would not be a death by suicide. *Daniels v. New York, N. H. & H. R. Co.* 183 Mass. 393, 67 N. E. 424.

As construed by the courts and applied by the juries, the form of this clause afforded no practical protection to the companies. In order to meet the situation the clause was rewritten in various forms, the clause appearing in the policy in suit being one of the more common forms used by insurance companies generally. In *Cady v. Fidelity & C. Co.* 134 Wis. 322, 113 N. W. 967, the policy provided that it did not insure against death resulting directly from "suicide, sane or insane." In that case it was held that—

"Death resulting from an act committed under the influence of delirium, as by one who in a paroxysm of fear

precipitates himself from a window, or having been bled removes the bandage, or takes poison by mistake and death ensues, never received nor deserved the name 'suicide' and is not within the meaning of the language 'death by suicide, felonious or otherwise, sane or insane.' Such language does not include an act of self-destruction resulting in death whether intentional or not, unaccompanied by a purpose to effect death, with the absence of all design to take life."

And it was held not error to refuse a requested instruction which was as follows:

"It is immaterial whether Frank A. Cady was delirious or not at the time immediately preceding his death and at the time he went over the railing, if his act in going over the railing was voluntary on his part—that is, that he intended to throw himself over the railing in the manner as shown by the evidence."

In *Pierce v. Travelers Life Ins. Co.* 34 Wis. 389, the doctrine of which was followed in the *Cady Case,* the court said:

"The language of the condition here is, 'shall die by suicide felonious or otherwise, sane or insane.' The intention here manifested is so plain as to seem incapable of further explanation, and unless there is something in the policy of the law which forbids such stipulation, we have nothing to do but to give effect to it. For however the word 'suicide,' which is held by the authorities to mean the same thing as 'death by his own hand' or 'take his own life,' might, if standing alone, be construed to imply a felonious self-destruction, or self-destruction by a sane man or one capable of understanding the nature and consequences of his own act and of judging between right and wrong, it is obvious that it cannot be so received or applied here. . . .

"The condition here relieves the company from liability only where the self-destruction was intentional, or committed by a party who was conscious of the nature of the act he was committing or about to commit, and conscious of its direct and immediate consequences, though the act may have been unaccompanied by any criminal or felonious intent or purpose. It does not apply or relieve the company where

the death of the assured was accidental, or may be properly said to have been caused by accident, though brought about, it may be, by his own hands or by some dangerous or destructive instrument held in them."

It is apparent from a consideration of the *Pierce* and *Cady Cases* that the use of the term "suicide" imports into the contract that one who dies as a result of his own act is not within the exception unless the act was intentional and committed by him at a time when he was conscious of the nature of the act and of its immediate and direct consequences although without criminal or felonious intent. While the decisions in the *Pierce* and *Cady Cases* practically eliminate the word "insane" from the provision because no person who was insane can commit suicide as that term is defined in the cases referred to, the conclusion is based upon the dominance of the fundamental idea of suicide,—that is, self-destruction by a person who has the mental capacity to form an intent and appreciate the nature and physical consequences of the act employed.

On behalf of the defendant company a very cogent and persuasive argument is submitted in support of the proposition that we should now overrule the *Cady* and *Pierce Cases* and adopt the doctrine of *Clarke v. Equitable Life Assur. Soc.* 118 Fed. 374; *De Gogorza v. Knickerbocker Life Ins. Co.* 65 N. Y. 232, and other cases, and hold in accordance with the great weight of authority that the words "sane or insane" in contracts of the kind under consideration cover every case of suicide, that is every case of self-destruction, except where death is the result of accident.

If the question were an original one in this court we should be obliged to agree with defendant's contention, but it is not. In *Pierce v. Travelers Life Ins. Co., supra,* it was held that "death by his own hand" or "take his own life" are synonymous with "commit suicide" or "voluntary suicide." While it is true that this interpretation reads out of the policy the word "insane," we are dealing here with a

Wisconsin contract which was entered into with the knowledge that this court had held that such a clause as is found in the policy in this case did not exempt defendant from liability unless the insured at the time he executed the act of self-destruction was capable of forming an intent to take his own life and conscious of the nature and physical consequences of his act. That has been the law of Wisconsin for nearly sixty years. The parties having made their contracts with this interpretation before them, to declare at this time that the language means something else would be to defeat the clearly expressed intention of the parties to the contract. Under such circumstances, the controlling force, a decision of this court, is strongly analogous to that of a decision which establishes a so-called rule of property.

No distinction can be built up on the ground that the phrase used in the case under consideration, "die by his own hand," does not have the same connotation as the word "suicide." The phrases as stated above are generally held by all courts to be synonymous. See note 35 A. L. R. 160 and cases cited. While in the case at bar the form of the verdict is somewhat unsatisfactory, the answer to question three can mean nothing else than that at the time deceased went through the window he was incapable of forming an intent and of appreciating the physical consequences of his act. While we might well arrive at a different conclusion than that arrived at by the jury upon the facts, we cannot say there is no credible evidence to support the finding of the jury with respect to his mental state at the time he jumped.

It further appears that in all jurisdictions it is held that a clause such as the one inserted in the policy in this case does not excuse the company from liability in case of accidental death. It is rather difficult to reconcile this holding with the holding of those jurisdictions which interpret the clause to include self-destruction in any form and from any cause and decline to limit it to intelligent, intended self-destruction. The only thing that distinguishes accidental death

from death where liability is excused is the absence of intent. If a man is insane, intent is absent because he is incapable of forming an intent and unable to appreciate the physical consequences of his act. A man gets up in the night and by mistake takes a deadly poison instead of a harmless remedy. Whether his death was accidental or self-destruction as defined in such cases as those referred to depends upon the state of the actor's mind. The act was intentional in the sense that it was volitional. Whether the consequence was intended or not can only be determined by the actor's state of mind, which when death promptly ensues can only be guessed at. Logically, therefore, a clause such as the one in question and such as those considered in the cases referred to should include death by accident where death results from an act performed by the insured, such as stepping into an open elevator shaft, taking poison by mistake, and many other similar instances. But all courts hold to the contrary. To say that liability exists where the insured is incapable of forming an intent is not so illogical and out of harmony with the cases as appears at first blush.

*By the Court.*—Judgment affirmed.