NOT DESIGNATED FOR PUBLICATION

No. 117,522

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARTIN MENDOZA-HERNANDEZ,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Haskell District Court; BRADLEY E. AMBROSIER, judge. Opinion on remand filed February 15, 2019. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: This case comes to us on remand from the Kansas Supreme Court. We had previously affirmed the district court's denial of Martin Mendoza-Hernandez' (Hernandez) K.S.A. 60-1507 motion, finding that it was untimely and that manifest injustice did not exist to justify an untimely filing. *Mendoza-Hernandez v. State*, 2018 WL 1973753, No. 117,522 (Kan. App. 2018) (unpublished opinion). We held that the newly amended K.S.A. 2017 Supp. 60-1507(f)(2)(A) applied retroactively. Accordingly, we were only required to consider the reasons for the delay and whether Hernandez made a colorable claim of innocence in deciding whether Hernandez' untimely filing could

1

proceed. We found that Hernadez did not make a colorable claim of innocence and gave no persuasive reason for his late filing. But the Kansas Supreme Court remanded this case for reconsideration in light of its recent decision in *White v. State*, 308 Kan. 491, 421 P.3d 718 (2018), finding the 2016 amendments to K.S.A. 60-1507(f)(2)(A) were not retroactive. On remand, we are required to consider a third factor, one that existed before the statute was changed, whether the merits of Hernadez' claims raised substantial issues of law or fact deserving the district court's consideration. After a review of the facts of this case and in light of *White*, we affirm the district court's decision.

FACTUAL AND PROCEDURAL HISTORY

In August 2011, Hernandez, who was 46 years old at the time of the offenses, was charged with three counts of rape. The rapes involved minor children, one of whom he impregnated when she was 10 years old.

In December 2011, the case was scheduled for waiver of preliminary hearing and arraignment. Christina Pennington served as an interpreter for the hearing. Pennington worked as a legal assistant for Hernandez' attorney. The State had no objection to Pennington serving as interpreter. The court questioned Pennington about whether she was qualified to interpret in the following colloquy.

> "THE COURT: Ms. Pennington, are you fluent in both the languages of English and Spanish?
> "THE INTERPRETER: I'm partially, yes.
> "THE COURT: Partially in what language?
> "THE INTERPRETER: In both.
> "THE COURT: So you're as proficient in Spanish as you are in English?
> "THE INTERPRETER: For the most part, yes.
> "THE COURT: Have you interpreted before?
> "THE INTERPRETER: Not in a courtroom, no.

2

"THE COURT: But in other settings?

"THE INTERPRETER: Just in the office, yeah.

"THE COURT: And you work in a law office; is that correct?

"THE INTERPRETER: Yes.

"THE COURT: And how long have you been interpreting in the law office?

"THE INTERPRETER: Almost two years."

Pennington then swore under oath to interpret the case. The court asked if counsel was satisfied with Pennington interpreting. The State and counsel for Hernandez stated they were. After being informed of his right to a preliminary hearing Hernandez agreed to waive his preliminary hearing.

The parties informed the court that Hernandez would be entering a no contest plea to two counts of rape, with the remaining count to be dismissed. The court informed Hernandez of his rights. Hernandez responded in English during the explanation of his rights by stating "Okay" two times. The court asked Hernandez if he understood his rights. Hernandez responded, in English, that he did. When asked about the circumstances surrounding the plea deal, Hernandez indicated that no additional promises were made and that he was not threatened into agreeing to plead no contest.

The court also informed Hernandez that he would be giving up certain appellate rights, and that "as long as [the court] sentence[s] you in accordance with the laws of Kansas, you have no right to appeal your sentence." Hernandez, through the interpreter, clarified that once a decision was made he could not "fight the court anymore."

The court also inquired into Hernandez' mental state, asking, "[I]s your mind clear this morning? Do you understand what we're doing here?" Hernandez replied, through the interpreter, that "he understands, but he forgets a lot of things." The court asked whether he understood what had been discussed so far. Hernandez responded, in English, "Yes."

3

He also responded, through the interpreter, that he understood but that he might not remember later that day.

Hernandez pled no contest to two counts of rape. The court found Hernandez guilty.

At sentencing, in March 2012, the court first swore in Brant Garcia to interpret the proceedings. After making sure that both parties received the presentence investigation report, the court told Garcia that he "need[ed] to translate everything that is said, including when I say thank you. You need to say that." Hernandez was sentenced to life in prison with the possibility of parole after 25 years. Hernandez was also sentenced to 155 months in prison on the second count, to be served concurrently. Hernandez did not file a direct appeal.

In March 2016, four years after his sentencing and well past the statutory filing deadline, Hernandez filed a motion under K.S.A. 60-1507, stating that (1) his plea was not made knowingly, willingly, or intelligently; (2) his attorney was ineffective; and (3) his interpreters were inadequate. Hernandez' motion indicates that he had a minimal education, no Spanish legal materials available, and was mentally ill. He alleges that before his plea he was severely mentally ill and attempted suicide while incarcerated. He contends that his counsel was ineffective for failing to have him psychologically evaluated after his attempted suicide. Due to his mental illness and his counsel's ineffectiveness, Hernandez concludes that his plea was not knowingly, willingly, or intelligently made. He also argues that the court erred in allowing an unqualified individual to interpret the hearings.

A preliminary hearing on Hernandez' motion was held in November 2016, where no evidence was presented. The court denied Hernandez' motion, finding that it was untimely and that manifest injustice did not exist. The court went on to discuss the merits

4

of Hernandez' claims and found that they did not warrant an evidentiary hearing and did not entitle him to relief.

This court affirmed the district court's decision denying Hernandez' motion as untimely. However, the Kansas Supreme Court summarily vacated this court's decision and remanded the case for reconsideration in light of *White*.

ANALYSIS

A defendant has one year from when a conviction becomes final to file a habeas corpus motion. K.S.A. 60-1507(f)(1). The one-year time limitation for bringing an action may be extended by the district court only to prevent manifest injustice. K.S.A. 60-1507(f)(2).

In 2014, the Kansas Supreme Court held that manifest injustice must be determined by considering whether: (1) the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the time limitation; (2) the merits of the movant's claims raise substantial issues of law or fact deserving the district court's consideration; and (3) the movant sets forth a colorable claim of actual innocence. *Vontress v. State*, 299 Kan. 607, Syl. ¶ 8, 325 P.3d 1114 (2014).

But the Legislature amended the statute in 2016, codifying the first and third factors set out by the *Vontress* court while removing the second factor from consideration. See K.S.A. 2017 Supp. 60-1507(f)(2)(A); *Vontress*, 299 Kan. 607, Syl. ¶ 8. Manifest injustice, as defined by the statute, now requires the court to only consider: (1) "why the prisoner failed to file the motion within the one-year time limitation or [2] whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2017 Supp. 60-1507(f)(2)(A).

5

In *White*, the Kansas Supreme Court held that the 2016 amendments to K.S.A. 60-1507 does not apply to motions filed before July 1, 2016. *White*, 308 Kan. 491, Syl. ¶ 1. Hernandez filed his motion before July 1, 2016. Therefore, this court must determine whether Hernandez established that manifest injustice would have existed under the three *Vontress* factors.

Hernandez failed to provide a persuasive reason for his late filing and did not make a claim of actual innocence. See *Mendoza-Hernandez*, 2018 WL 1973753, at *4-5. Thus, the only issue remaining for this court to address is whether the merits of Hernandez' claims raise substantial issues of law or fact deserving the district court's consideration. See *Vontress*, 299 Kan. 607, Syl. ¶ 8.

*Hernandez' claims do not raise substantial issues of law or fact deserving the district court's consideration.*

When the district court denies a 60-1507 motion based only on the motions, files, and records after a preliminary hearing, the appellate court is in just as good a position as the district court to consider the merits. Therefore, the standard of review is de novo. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

To prove that an evidentiary hearing was warranted, Hernandez was required to "'make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.'" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014) (quoting *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 [2011]). On appeal, Hernandez primarily argues that his plea was not knowingly, willingly, or intelligently entered because his interpreters were inadequate. Hernandez also briefly mentions his mental health issues but fails to provide any support for his argument.

Because Hernandez' primary language was one other than English, a qualified interpreter was required at his plea and sentencing hearings. K.S.A. 75-4351(b). A qualified interpreter must have:

"(1) A general understanding of cultural concepts, usage and expressions of the foreign language being interpreted, including the foreign language's varieties, dialects and accents;

"(2) the ability to interpret and translate in a manner which reflects the educational level and understanding of the person whose primary language is other than English;

"(3) basic knowledge of legal rights of persons involved in law enforcement investigations, administrative matters and court proceedings and procedures, as the case may be; and

"(4) sound skills in written and oral communication between English and the foreign language being translated, including the qualified interpreter's ability to translate complex questions, answers and concepts in a timely, coherent and accurate manner." K.S.A. 75-4353(c).

Additionally, the interpreter cannot be "interested in the outcome of the proceeding, unless the appointing authority determines that no other qualified interpreter is available to serve." K.S.A. 75-4353(a). Finally, the court must "make[] a preliminary determination that the interpreter is able to readily communicate with the person whose primary language is one other than English and is able to accurately repeat and translate the statement of such person." K.S.A. 75-4353(b).

Hernandez argues that the district court failed to determine if the interpreter was qualified, failed to determine that the interpreter did not have an interest in the outcome of the proceeding, and failed to make a preliminary determination that the interpreter was

able to communicate with Hernandez. Hernandez argues that because the court failed to do so he did not understandingly enter his plea.

This court has addressed similar arguments. In *Shaha v. State*, 44 Kan. App. 2d 334, 337-40, 236 P.3d 560 (2010), this court held that the district court's failure to record findings that an interpreter is qualified, as defined by the statute, does not necessarily require a new hearing. In *Shaha*, this court noted that no one objected to the interpreter's qualifications or the lack of findings on the interpreter's qualifications on the record. The court noted that allowing "'a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse.'" 44 Kan. App. 2d at 338 (quoting *Valladares v. United States*, 871 F.2d 1564, 1566 [11th Cir. 1989]). The court also noted that the record did not contain many indications that the interpreter might be unqualified. The interpreter admitted to no experience as an interpreter, but he said he spoke the language well. Finally, the court noted:

> "Absent some contrary showing, courts presume that an interpreter exercising his or her official duties has acted properly. A showing that an interpreter has had some difficulty translating a question or response is not sufficient to rebut the presumption because courts have recognized that languages may not translate directly. A literal translation is not essential so long as the answers of the interpreter conveyed the same meaning expressed by the witness." 44 Kan. App. 2d at 339.

The court held that when the record reveals no suggestions that the interpreter failed to adequately interpret the proceedings, the district court's error in failing to consider the interpreter's qualifications on the record was harmless. 44 Kan. App. 2d at 342; see *State v. Pham*, 234 Kan. 649, 662, 675 P.2d 848 (1984) (noting appointment of interpreter is within discretion of the trial court and will be reversed only in the most extreme circumstances).

This court has also held that an interpreter is not an impermissible interested party just because the interpreter was an employee of the defendant's attorney. *State v. Rodriguez-Hernandez*, No. 112,200, 2015 WL 3875333, at *4-5 (Kan. App. 2015) (unpublished opinion). In *Rodriguez-Hernandez*, the defendant argued, in part, that manifest injustice was present because the interpreter was unqualified because the interpreter was employed by Rodriguez-Hernandez' counsel. This court found it significant that no one objected to counsel's employee serving as the interpreter until four years after the hearing. The court held that Rodriguez-Hernandez' summary conclusion, absent some supporting facts in the record, was not enough to prove that the interpreter was impermissibly interested in the outcome of the case. 2015 WL 3875333, at *5.

Here, the record contains no indication that either interpreter was not qualified to interpret the proceedings. First, like in *Shaha* and *Rodriguez-Hernandez*, Hernandez failed to object to his interpreter at any point during the plea or sentencing hearing. See *Shaha*, 44 Kan. App. 2d at 338; *Rodriguez-Hernandez*, 2015 WL 3875333, at *5. Second, like in *Shaha* and *Rodriguez-Hernandez*, there is nothing in the record that persuades this court that either interpreter was not qualified to interpret either hearing. See *Shaha*, 44 Kan. App. 2d at 341-42; *Rodriguez-Hernandez*, 2015 WL 3875333, at *5.

Hernandez specifically points to two places in the record which he argues shows that the interpreters were not properly qualified to interpret the hearings. At the plea hearing, where his counsel provided the interpreter, Hernandez relies on Pennington's statement that she was "partially" fluent in English and Spanish. In the context of the hearing though it seems that Pennington was capable of interpreting. She indicated that she was, for the most part, "as proficient in Spanish as [she was] in English." Pennington was sworn in and instructed to interpret everything that occurred. Pennington did not have to translate word-for-word what was said. See *Pham*, 234 Kan. at 664 (acknowledging that K.S.A. 75-4354 does not require literal translation). Further,

Pennington demonstrated that she was capable of relaying Hernandez' questions to the judge.

As for the sentencing hearing, Hernandez alleges that the interpreter was recruited from mowing the lawn of the courthouse before interpreting the hearing. Other than Hernandez' mere accusation there is no indication in the record this occurred. Garcia was introduced as the "Court Interpreter" and was sworn in as an interpreter. The court did have to instruct Garcia to interpret "everything that is said, including when I say thank you." However, if Garcia failed to translate something before that instruction, it was inconsequential. See *Shaha*, 44 Kan. App. 2d at 339 (finding Shaha was not prejudiced by interpreter's failure to begin translating immediately). Garcia also did not hesitate to ask the court to repeat something if he was unable to interpret something as it was said.

The record does not indicate that the district court abused its discretion in appointing Pennington and Garcia as interpreters. See *Pham*, 234 Kan. at 662. There is no indication that either Pennington or Garcia were not qualified interpreters and that as a result Hernandez did not know his rights or what he was giving up when he chose to plead no contest. See K.S.A. 2017 Supp. 22-3210(a); *Boykin v. Alabama*, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (noting defendant must voluntarily and understandingly enter plea).

Hernandez also tangentially discusses his mental health issues as exacerbating his inability to understand the hearings. "Further [Hernandez'] assertion that he suffered from mental illness after attempting suicide in the Haskell County Jail also warranted an evidentiary hearing, particularly considering the deficiencies in the translation of his plea hearing." But, Hernandez does not provide any evidence beyond his claims that he attempted to commit suicide while in custody and was subsequently denied mental health treatment. Hernandez also does not cite any caselaw supporting his point.

10

It is presumed that a defendant is competent to stand trial. *State v. Hedges*, 269 Kan. 895, Syl. ¶ 7, 8 P.3d 1259 (2000). The competency standard for pleading guilty or waiving the right to counsel is the same as the competency standard for standing trial. *Godinez v. Moran*, 509 U.S. 389, 396-97, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993). Further, the district court is in the best position to determine whether a defendant is competent. See *State v. Harkness*, 252 Kan. 510, 516-17, 847 P.2d 1191 (1993). Whether an inquiry into the mental state of the defendant is required is within the discretion of the district court. 252 Kan. at 516-17. Kansas law provides a mechanism for counsel to raise the issue of a defendant's competency if counsel believes it is necessary. See K.S.A. 2017 Supp. 22-3302. From the record on appeal, there is no evidence suggesting that the district court abused its discretion in failing to have Hernandez undergo some sort of mental evaluation and that the voluntariness of his plea was jeopardized due to the court's failure to do so.

Finally, in his pro se motion, Hernandez also argues that his counsel was ineffective for failing to request a psychological evaluation following his suicide attempt. This issue is not addressed in his appellate brief, and failure to brief an issue is the equivalent of abandoning it. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issues not adequately briefed deemed waived or abandoned). However, we find that although a suicide attempt when faced with charges that will result in spending the rest of one's life in prison is concerning, it is not prima facie evidence of mental illness as Hernandez argues here. Our Supreme Court has defined suicide as "'[t]he deliberate termination of one's existence, while in the possession and enjoyment of his mental faculties.'" *Muzenich v. Grand Carniolian Slovenian Catholic Union*, 154 Kan. 537, 543, 119 P.2d 504 (1941) (quoting Black's Law Dictionary).

Hernandez presents no other evidence to support a finding that he was mentally ill or suffering from any psychoses that would indicate the need for a competency or psychological evaluation. Instead he argues that his suicide attempt, being placed in

isolation in the jail to prevent another suicide attempt, and the heinousness of his conduct resulting in the charges filed was prima facie evidence that he needed such an evaluation. Accordingly, his attorney was ineffective for failing to request an evaluation. He presents no evidence or claims of any preexisting mental illness issues or any detachment from reality. He presents no caselaw to support a finding that the mere existence of a suicide attempt presents reasonable doubt as to a defendant's competency to enter a plea or ability to understand the proceedings. *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318-19 (9th Cir. 1997) (while attempted suicide is an extremely serious action, "we do not believe that every suicide attempt inevitably creates a doubt concerning the defendant's competency"). Hernandez was required to "'make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.'" *Sola-Morales*, 300 Kan. at 881.

In conclusion, Hernandez failed to show that, under any *Vontress* factor, manifest injustice exists and that the one-year time limitation should be extended. See *Mendoza-Hernandez*, 2018 WL 1973753, at *5. Accordingly, we affirm.

Affirmed.

12